IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Criminal Action No. |
| | ) | |
| FREDERICK THOMAS | ) | 2:11-CR-44 (SSC) (RWS) |
| _____ | ) | |

DEFENDANT'S MEMORANDUM IN
SUPPORT OF A REASONABLE SENTENCE

Comes now, FREDERICK THOMAS, Defendant in the above-styled action, by and through undersigned counsel and submits this Memorandum in Support of a Reasonable Sentence.

Mr. Thomas was named in two counts of a multi-count, multi-defendant indictment.  Originally, Mr. Thomas was charged with conspiracy to possess a destructive device in violation of 18 U.S.C. §371 (Count I), and possession of an unregistered silencer in violation of 42 U.S.C. §§ 5841, 5845(a)(7) and 5861(d) (Count II).  On April 10, 2012, Mr. Thomas pleaded guilty to Count I of the indictment.

**Not a Felony Involved In or Intended to Promote a Federal Crime of Terrorism**

The probation officer has taken the position that Mr. Thomas's offense level should be increased by twelve (12) levels because the possession of the destructive device (and or silencer) were involved in or intended to promote a federal crime of terrorism. Nothing could be further from the truth. As Mr. Thomas asserted at his detention hearing before the magistrate, he and Mr. Roberts attempted to possess the items as protection in the event of a catastrophic event which included the federal government turning its weapons on the people of the United States. Admittedly, there was talk of assassination and destruction of federal buildings, but out of the more than four hundred (400) hours of recorded conversations, such talk made up a small portion and when produced by the government at the detention hearing, was taken out of context.

All of the information relied upon by the probation officer in applying the terrorism enhancement came from the government and its interpretation of the conversations engaged in by Mr. Thomas, Mr. Roberts and the (not so) confidential informant, Joseph Sims. Rather than the government's interpretation, a more balanced rendition appears in the Motion to Revoke Magistrate's Order of Detention

filed by counsel for Mr. Roberts. In that pleading[1] it is noted that the meeting on March 17, 2011, wherein Mr. Thomas, Mr. Sims and others first started discussing the militia and associated activities, the vast majority of the conversation centered on an upcoming meeting in Valdosta where militia members from all around the Southeast would attend and speak. The specific discussions about the Georgia Militia and its activities overwhelmingly dealt with the legitimization of the militia, and recruitment of members and soliciting various elected officials in an effort to make the militia the "governor's army" in the event of an attack by federal troops against the citizens of Georgia. All of the other recorded meetings are largely the same - much discussion about politics, some discussion about militias, and some ranting about what they would do if . . . . In short, rather than being the precursor to a terroristic event, the meetings were ranting sessions of four old men and some random associates.

Similarly, the attempt to purchase the silencer and the destructive device was not in relation to an act of terrorism. Indeed, Mr. Thomas expressly disavowing any intention to assassinate government officials. (*See* July 9, 2011, meeting). When an FBI operative posing undercover spoke with Mr. Thomas about the possibility of

---

[1] Mr. Thomas will not reproduce the entirety of Mr. Robert's motion here, but specifically incorporates the motion particularly pages 4 - 16.

assassinations or destruction of government buildings, Mr. Thomas specifically indicated the group was going in an entirely different direction.  (*See* July 18, 2011 recorded conversation).  Later, when speaking of any explosives he may obtain, Mr. Thomas specifically said he would use them to "experiment."  (*See* September 12, 2011, recorded conversation).  Still later, Mr. Thomas defines how he would experiment - - by blowing up the explosives at a range.  (*See* September 20, 211 recorded conversation).  Still later, Mr. Thomas indicated that any explosives would, in fact not be detonated, but instead buried for the time being.[2]

Because the evidence demonstrates that the items were not being possessed in association with any crime of terrorism, the twelve (12) level increase is inappropriate.

**Mr. Thomas was not a Leader as Contemplated by the Guidelines**

The probation officer increases Mr. Thomas's base offense level by two (2) because the probation officer believes Mr. Thomas was the conspiracy leader and organizer.  While it is true Mr. Thomas is heard more than anyone else on the recordings amassed by the government, and it is true that he asserts that he is the

---

[2]This exchange demonstrates what Mr. Thomas said at his initial detention hearing before the magistrate court - - these items were being obtained not as offensive weapons but instead, to be used in the event the federal government ever took arms against the citizens.  If that predicating event never took place, the silencer and the explosives would go unused.

leader of the group, an examination of the relevant facts demonstrate he is not a leader or organizer any more than Mr. Roberts is. The two co-defendants and friends met together before any of the recordings and talked about politics. Mr. Roberts had been in the militia movement prior to meeting Mr. Thomas, a fact which fueled the friendship as Mr. Thomas was interested in learning about it. The two got together and discovered they had similar interests and political beliefs and discussed how they could further their mutual political views. In fact, it was Mr. Roberts who indicated he knew others and brought Mr. Crump and Mr. Adams to meetings.

As to Mr. Crump and Mr. Adams, they were charged in two counts totally unrelated to those charged against Mr. Roberts and Mr. Thomas. There is no evidence Mr. Thomas was in any way involved in the production (or gathering of materials) of Ricin.[3]

An aggravating role is reserved for someone who is an organizer or leader of a criminal activity. In the instant case, there were only two people involved in the conspiracy for which Mr. Thomas stands convicted - - he and Mr. Roberts. As noted above, Mr. Thomas was not the leader or supervisor of Mr. Roberts. The two were co-defendants and co-equals. An aggravating role enhancement is inappropriate. *See*

---

[3]In fact, it was Mr. Adams who indicated he knew individuals who could produce chemical agents.

5

*United States v. Tilga*, 824 F.Supp 2d 1295, 1337 (D.N.M. 2011) (aggravating role inappropriate where defendant was average participant).

### This Court Should Depart Downward To Give Mr. Thomas Credit for His Accepting Responsibility

Assuming *arguendo* the Court does not grant the above objections to the Guidelines calculations (or only grants Mr. Thomas's objection to the role enhancement) this Court should depart below the sentence recommended by the probation officer because, in effect, Mr. Thomas has not been given credit for his accepting responsibility as contemplated by the Guidelines. Mr. Thomas pleaded guilty to Count I, which carries a maximum sentence of sixty (60) months in prison. However, the current Guideline calculation call for a two hundred ninety two (292) to three hundred sixty five (365) month range of imprisonment. That range of imprisonment is ***with three levels subtracted for acceptance of responsibility***.[4]

This Court, in such circumstances where the Guideline range falls above the statutory maximum sentence, is authorized to depart downwardly to give effect to the intent of the guidelines - - credit defendants with pleading guilty and accepting

---

[4]The current Guideline calculation calls for a Criminal History Category of VI (the maximum) because of the terrorism enhancement. Mr. Thomas would otherwise be a Criminal History Category I. Even then, his guideline calculation with acceptance at category I would be 168 - 210 months in prison, a range still over the statutory maximum.

responsibility for their actions.  *United States v. Rodriguez*, 64 F.3d 638 (11th Cir. 1995).  As the Eleventh Circuit has noted: "[a] departure from the sentence prescribed by [the guidelines] when a defendant's acceptance of responsibility has not been duly recognized is consistent with the goals of the guidelines." (*Id*. at 643).  In *Rodriguez* as in the instant case, the calculated guideline sentence was above the statutory maximum even after an adjustment for acceptance of responsibility.  The defendant in *Rodriguez* argued that he was not effectively given credit for accepting responsibility because his sentence was not reduced via the plea.  The Court agreed and noted:

> one of the legitimate societal interests served by rewarding a defendant's acceptance of responsibility is providing an incentive to engage in plea bargaining . . . if a defendant knows that . . . he will receive the same sentence regardless of whether he accepts responsibility, he will be more likely to shun a plea agreement and go to trial . . . Allowing a departure on acceptance of responsibility in such circumstances preserves the possibility of some sentencing leniency and thus serves society's legitimate interest in guilty pleas and plea bargaining.

(*Id*.).  Based on the rationale announced in *Rodriguez,* this Court should grant a three level downward departure from the Guideline range wherein sixty (60) months falls in the middle of the range - - 57 to 71 months. (*See e.g.,* Level 25, CH I).  Such a departure would place Mr. Thomas in a range of punishment of 41 to 51 months (*See*

7

*e.g.*, Level 22, CH I) and give effect to Mr. Thomas's accepting responsibility for his actions.

### Mr. Thomas's Personal Characteristics Warrant the Imposition of a Reasonable Sentence Which is Below the Advisory Guideline Range

The Supreme Court has spelled out a procedure that district courts must follow when imposing a federal sentence. First, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guideline range." *Gall v. United States*, 532 U.S. 38, 128 S.Ct. 586, 596 (2007). Then, after allowing both parties to argue and present evidence on what they believe a reasonable sentence to be, "the district court should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party." *Id*. Ultimately, the sentencing court "must make an individualized assessment based on the facts presented" and impose a sentence that is reasonable. *Id*. The key element in determining what sentence is reasonable is that it must be one that is "sufficient but not greater than necessary."

### Mr. Thomas's Exemplary Life History

Mr. Thomas's specific individual characteristics warrant this Court exercising its discretion and imposing a reasonable sentence - - one below the suggested Guideline range. Mr. Thomas is seventy three years old. He spent most of his life working in either the military or in defense related industry. He is a thirty (30) year

veteran of the United States Navy and served during the Vietnam Era, not because he was drafted or even likely to be drafted, but because he voluntarily enlisted. In the military he thrived becoming a Chief Petty Officer. After serving approximately eleven (11) years of active duty he was honorably discharged (but served another twenty (20) years in the Naval Reserve), Mr. Thomas began taking college courses and became a self taught computer hardware and software expert ultimately obtaining jobs as an engineer for companies such as Lockheed-Martin, General Dynamics, Boeing and various military consulting firms. Ultimately, at the age of seventy (70) he retired and he and his wife of fifty four (54) years moved to the North Georgia Mountains. Until this event, Mr. Thomas has had absolutely no contacts with law enforcement for any criminal conduct.

### Mr. Thomas' Debilitating Health Conditions

Mr. Thomas is unhealthy even for a seventy three year old. Mr. Thomas's personal doctor for the recent past has examined him while he has been housed at the Hall County Detention Center. Dr. White has chronicled[5] the many maladies that Mr. Thomas suffers from including: (1) Chronic Obstructive Pulmonary Disease;[6]

---

[5] *See* Appendix A, attached hereto.

[6] Chronic obstructive pulmonary disease (COPD) is one of the most common lung diseases. It makes it difficult to breathe. There are two main forms of COPD: (1) Chronic bronchitis, which involves a long-term cough with mucus; and

(2) Type 2 Diabetes;[7] (3) Coronary Artery Disease with a History of Myocardial Infarction;[8] (4) Hypertension;[9] (5) Hyperlipidemia: (6) Abdominal Aneurysm; (7) Renal Insufficiency;[10] (8) Degenerative Disc Disease; and (9) Osteoarthritis.

As summarized by Dr. White, "Mr. Thomas continues to use multiple respiratory inhalers for treatment of his pulmonary conditions [but] his respiratory symptoms of cough and dyspnea have increased." Based on his knowledge of Mr. Thomas's history, conditions, and his recent examinations[11] Dr. White concludes:

---

(2) Emphysema, which involves destruction of the lungs over time. *See*, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001153/. As Dr. White noted, Mr. Thomas has had "two recent episodes of exacerbation of his [COPD which] required treatment . . . with antibiotics. *See* appendix A.

[7]After many years, diabetes can lead to serious problems with eyes, kidneys, nerves, heart, blood vessels, or other areas in the body. For People with diabetes, the risk of a heart attack is the same as that of someone who has already had a heart attack. *See* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001356/.

[8]Also known as a heart attack.

[9]As noted in Dr. White's report, when he examined Mr. Thomas at the Detention Center, Mr. Thomas's resting blood pressure was 130 over 86. However, when taken after brief exercise his blood pressure was an alarming 190 over 94.

[10]Kidney failure is often associated as a consequence of Type 2 Diabetes.

[11]Dr. White has examined Mr. Thomas twice since his incarceration on the instant offense.

> Mr. Thomas has significant medical problems. He is at considerable risk of an occurrence of a severe medical event.

*See* Appendix A. Given the number and severity of his conditions, a sentence that is not even significantly lengthy could effectively be a death sentence[12] for Mr. Thomas. Such a sentence would clearly be one "greater than necessary" to give meaning and effect to all of the factors outlined in 18 U.S.C. §3553. This Court should take Mr. Thomas's physical frailty into account and vary from the suggested Guideline range.

---

[12] Dr. White does note that the risk of Mr. Thomas suffering a severe medical event would be diminished if he was confined to a facility better equipped to deal with his medical needs. *See* Appendix A. Mr. Thomas respectfully requests that should this Court impose a term of imprisonment, the Court recommend to the Bureau of Prisons that Mr. Thomas be designated to the Federal Medical Facility at Butner, North Carolina.

11

**Conclusion**

For the above reasons individually as well as collectively, Mr. Thomas respectfully requests this Court exercise its discretion and impose a sentence below the range suggested by the advisory Guidelines.

Dated, this the 20th of August, 2012.

                                            Respectfully submitted,

                                            *s/Jeffrey L. Ertel*
                                            JEFFREY L. ERTEL
                                            State Bar No. 249966

                                            ATTORNEY FOR MR. THOMAS

Federal Defender Program, Inc.
101 Marietta Street
Suite 1500
Atlanta, Georgia  30303
404/688-7530
jeff_ertel@fd.org

**CERTIFICATE OF SERVICE**

This is to certify that the forgoing has been formatted in Times New Roman, 14 Point in compliance with Local Rule 5.1, and has been electronically filed and delivered upon counsel for the Government at the following address:

>Jeffrey Brown, Esq.
>Assistant United States Attorney
>600 Richard B. Russell Building
>75 Spring Street, S. W.
>Atlanta, Georgia  30303

Dated:  This 20th day of August, 2012.

_s/Jeffrey L. Ertel_